# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MISSOURI
### CENTRAL DIVISION

| | |
|---|---|
| **COLBY L. BEAL**<br>**individually and on behalf of**<br>**all others similarly situated,**<br><br>                    *Plaintiff*,<br><br>**vs.**<br><br>**OUTFIELD BREW HOUSE, LLC**<br>**d/b/a BUDWEISER BREW HOUSE,**<br>**Serve at Registered Agent:**<br>    **CSC-Lawyers Incorporating Service**<br>    **Company**<br>    **221 Bolivar Street**<br>    **Jefferson City, MO 65101**<br><br>                  *Defendant*. | **Case No.: 2:18-cv-4028**<br><br><br>**JURY TRIAL DEMANDED** |

## FIRST AMENDED CLASS ACTION COMPLAINT

Plaintiff Colby Beal, individually and on behalf of all others similarly situated, brings this action against Defendant Outfield Brew House, LLC d/b/a Budweiser Brew House ("Brew House") to secure redress for Brew House's practice of sending text messages to cellular telephone numbers in violation of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, *et seq.* Plaintiff, for his first amended class action complaint, alleges as follows based upon personal knowledge as to himself and his own acts and experiences, and as to all other matters, upon information and belief, including investigation conducted by counsel:

### PARTIES, JURISDICTION, AND VENUE

1.    At all times relevant hereto, Plaintiff Beal has been a resident of Boone County, Missouri.

2.    Defendant Brew House is a Missouri limited-liability company with its principal

place of business at 601 Clark Street, Suite C, St. Louis, Missouri 63102.

3.     Defendant Brew House can be served through its registered agent CSC-Lawyers Incorporating Service Company, 221 Bolivar Street, Jefferson City, Missouri 65101.

4.     This Court has federal question subject matter jurisdiction over this TCPA action pursuant to 28 U.S.C. § 1331.  *See Mims v. Arrow Financial Services, Inc.*, 132 S. Ct. 740 (2012).

5.     The Court has personal jurisdiction over Brew House and venue is appropriate in this district pursuant to 28 U.S.C. § 1391(b)(2), because Brew House sent unlawful text messages to a resident of this district.

6.     On information and belief, Brew House has sent the same or similar text messages complained of by Plaintiff to others within this judicial district, such that a substantial portion of the events giving rise to this cause of action occurred here.

7.     In addition, Brew House also transacts significant amounts of business within this district, solicits customers here, directs telephone calls and text messages here – including to the cellular telephone numbers of Plaintiff and others with area codes specific to central Missouri,[1] and enters into consumer and business contracts here, thereby subjecting it to the jurisdiction of this Court.

## NATURE OF THE ACTION

8.     Brew House is a drinking establishment.

9.     Between February 13, 2014 to April 4, 2018, in order to advertise and market its products and services, to increase revenue, to expand its customer base, and to pursue other marketing objections, Brew House caused advertising and/or telemarketing text messages to be

---

[1]     *See Lowe v. CVS Pharmacy, Inc.*, 233 F. Supp. 3d 636, 643 (N.D. Ill. 2017) (placing a call to a phone number with an Illinois-affiliated area code constitutes "purposeful direction" warranting the Court's exercise of jurisdiction) (*citing Keim v. ADF Midatlantic*, 199 F. Supp. 3d 1362, 1370 (S.D. Fl. 2016) (collecting cases)).

2

sent to the cellular telephones of Plaintiff and the putative class members in violation of the TCPA.

10.     Specifically, Brew House (either directly or through a third-party telemarketer) sent unsolicited text messages to the cellular telephones of Plaintiff and the putative class members promoting specials and events at the Brew House and encouraging Plaintiff and the putative class members to visit Brew House with their friends or associates.

11.     By sending the text messages at issue in this Complaint, Brew House has caused Plaintiff and the putative class members (as defined herein) actual harm.

12.     On information and belief, Brew House routinely sends these text messages despite the fact that Plaintiff and the putative class members:

> (a)     never provided prior express consent in writing, or otherwise, for Brew House to send advertising or telemarketing text messages to their cellular telephone numbers; and/or

> (b)     never provided prior express consent in writing, or otherwise, for Brew House to send text messages to their cellular telephone numbers using an automatic telephone dialing system (as defined by the TCPA).

13.     Brew House also sent such advertising and/or telemarketing text messages to Plaintiff and other putative class members even though (i) it failed to establish written policies and procedures to ensure compliance with the national and/or internal do-not-call rules and regulations, and train its staff in compliance with such policies and procedures, and/or (ii) Plaintiff and other putative class members have registered their telephone numbers on the national do-not-call registry.

14.     Plaintiff, on his own behalf and on behalf of all others similarly situated, brings the instant lawsuit seeking an injunction requiring Brew House to cease all unsolicited text message

3

activities and for an award of statutory damages to Plaintiff and members of the putative class under the TCPA.

## THE TELEPHONE CONSUMER PROTECTION ACT OF 1991
### 47 U.S.C. § 227, *et seq.*

15. Advancements in telephone dialing technology since the 1980s and 90s have made reaching a large number of consumers by telephone easier and more cost-effective. However, this technology has also brought with it an onslaught of unsolicited robocalls, spam text messages, and junk faxes that intrude on individual privacy and waste consumer time and money.

16. Senator Hollings, sponsor of the TCPA, described such marketing practices as "the scourge of modern civilization, they wake us up in the morning; they interrupt our dinner at night; they force the sick and elderly out of bed; they hound us until we want to rip the telephone out of the wall." 137 Cong. Rec. 30, 821 (1990).

17. The FCC recently noted, "every month, U.S. consumers are bombarded by an estimated 2.4 billion robocalls." *In the Matter of Advanced Methods to Target and Eliminate Unlawful Robocalls*, Notice of Proposed Rulemaking, Statement of Chairman Pai, 32 FCC Rcd. 2306, 2331 (2017) (emphasis added). That number has since increased to an estimated 2.5 billion robocalls per month as of October 2017.[2]

18. In response to these unwanted telephone calls, text messages, and junk faxes, the federal government and numerous states have enacted legislation to combat these widespread telemarketing abuses. As Congress recognized:

> Many customers are outraged over the proliferation of intrusive, nuisance calls to their homes from telemarketers. … *Banning such automated or prerecorded telephone calls* to the home, except when

---

[2] *See In the Matter of Advanced Methods to Target and Eliminate Unlawful Robocalls*, Report and Order and Further Notice of Proposed Rulemaking, Statements of Commissioners Clyburn and Rosenworcel, 32 FCC Rcd. 9706, 9756 & 9759 (2017).

4

the receiving party consents to receiving the call or when such calls are necessary in an emergency situation affecting the health and safety of the consumer, *is the only effective means of protecting telephone consumers from this nuisance and privacy invasion*.

Pub. L. No. 102-243 §§ 2(6) & (12) (1991), *codified at* 47 U.S.C. § 227 (emphasis added).[3]

19.     As is relevant here, the TCPA prohibits "mak[ing] any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice … to any telephone number assigned to a … cellular telephone service, …" 47 U.S.C. § 227(b)(1)(A)(iii); 47 C.F.R. § 64.1200(a)(1).

20.     For purposes of the TCPA, "[a] text message to a cellular telephone … qualif[ies] as a 'call' within the compass of § 227(b)(1)(A)(iii)." *Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663, 667 (2016) (citation omitted).[4]

21.     "Automatic telephone dialing system" ("ATDS") refers to any equipment that has the "capacity to dial numbers without human intervention[.]" *Griffith v. Consumer Portfolio Serv., Inc.*, 838 F. Supp. 2d 723, 726 (N.D. Ill. 2011) (*citing In re Rules & Regulations Implementing the TCPA of 1991*, 18 FCC Rcd. 14014, 14092, ¶ 132 (2003) ("2003 TCPA Order")).

22.     In 2012, the FCC – the agency tasked with promulgating the implementing regulations of the TCPA – revised its TCPA rules to require *prior express written consent* before initiating a telephone call "that includes or introduces an advertisement or constitutes

---

[3]     *See also Zean v. Fairview Health Servs.*, 858 F.3d 520, 522-23 (8th Cir. 2017) ("Recognizing that automated calls are often a nuisance and an invasion of privacy, Congress passed the TCPA to balance individuals' privacy rights, public safety interests, and commercial freedoms of speech and trade.") (internal citations and quotation marks omitted).

[4]     *See also In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, Order, 30 FCC Rcd. 12484, 12485, ¶ 3 (2016) (the TCPA's prohibition on robocalls "encompasses both voice and text calls, including short message service (SMS) calls and text calls and text calls made using Internet-to-phone technology, …").

5

telemarketing[.]" 47 C.F.R. § 64.1200(a)(2); *In re Joint Petition filed by Dish Network, LLC*, 28 FCC Rcd. 6574, 6589, ¶ 37 & fn. 113 (2013) ("Dish Network Ruling").

23.     According to FCC regulations, "*prior express consent*" must (i) be in writing; (ii) be signed by the person providing the consent; (iii) clearly authorize the calling party to use an ATDS or artificial or pre-recorded voice; (iv) specify the telephone number to which the person is consenting to be called; and (v) not be a condition of purchasing any goods or services. *In the Matter of Rules and Regulations Implementing the TCPA of 1991*, FCC Report and Order, 27 FCC Rcd. 1830, 1843, ¶ 32 (2012) ("2012 TCPA Order").

24.     In 2003, the FCC adopted a national do-not-call registry to provide consumers with an option to prohibit unwanted telemarketing solicitations. *2003 TCPA Order* at 14034-35, ¶ 28.

25.     The FCC rules also prohibit any person or entity from initiating a telemarketing solicitation to any "residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government." 47 C.F.R. § 64.1200(c)(2). For purposes of this provision of the TCPA, wireless subscribers who are registered on the national do-not-call list are presumed to be "residential subscribers." *2003 TCPA Order* at 14038-39, ¶ 36.

26.     The FCC rules also require telemarketers to maintain a company-specific internal do-not-call list, to immediately record a consumer's do-not-call request, and to cease any further telemarketing calls within thirty days of such request. 47 C.F.R. § 64.1200(d)(3).

27.     The FCC's regulations define "advertisement" as "any material advertising the commercial availability or quality of any property, goods, or services." 47 C.F.R. § 64.1200(f)(1). Whether a call is an "advertisement" depends on the content of the material. *Golan v. Veritas Entm't, LLC*, 788 F.3d 814, 820 (8th Cir. 2015).

28.     "Telemarketing" is defined as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person." 47 C.F.R. § 64.1200(f)(12). The "telemarketing" inquiry focuses on the purpose of the telephone call or message, rather than its content. *Golan*, 788 F.3d at 820.

29.     The FCC has also made rulings regarding the TCPA's vicarious liability standards as they relate to telemarketing. As early as 1995, the FCC stated that "[c]alls placed by an agent of the telemarketer are treated as if the telemarketer itself placed the call." *In re Rules and Regulations Implementing the TCPA of 1991*, 10 FCC Rcd. 12391, 12397 (1995).

30.     The FCC has also clarified that vicarious liability is imposed under federal common law principles of agency for violations of either sections 227(b) or (c) that are committed by third-party telemarketers. *Dish Network Ruling* at 6580 & ¶ 18.

31.     The TCPA provides for injunctive relief and the greater of actual damages or $500 per violation, which may be trebled where defendant's conduct was done willfully or knowingly. 47 U.S.C. §§ 227(b)(3) and (c)(5).

### FACTUAL ALLEGATIONS COMMON TO ALL COUNTS

32.     Between February 13, 2014 and April 4, 2018, Brew House and/or its agents utilized an ATDS to send text messages to the wireless telephone numbers of Plaintiff and the putative class members.

33.     Specifically, the hardware and software used by Brew House and/or its agents has the capacity to generate and store random numbers, or store lists of telephone numbers, and to dial those numbers, *en masse*, in an automated fashion without human intervention.

34.     Plaintiff and the putative class never provided prior express consent, in writing or

7

otherwise, for Brew House to send autodialed, advertising, and/or telemarketing text messages to their cellular telephone numbers.

35.     Brew House (i) requires consumers or businesses to provide their telephone numbers as a condition of providing happy-hour goods and services, (ii) does not advise consumers or businesses it intends to send autodialed, advertising, and/or telemarketing text messages to their cellular telephone number, and (iii) does not obtain prior express consent, written or otherwise, to send autodialed, advertising, and/or telemarketing text messages to the consumer's or business's cellular telephone number.

36.     When Brew House obtains the cellular telephone number of a consumer or business, it adds it to a stored list of numbers to which Brew House and/or its agents repeatedly send autodialed, advertising, and/or telemarketing text messages.

37.     Brew House's text messages are sent with equipment having the capacity to dial numbers without human intervention, the equipment is unattended by human beings, and the equipment does, in fact, send text messages automatically, *i.e.*, without human intervention.

38.     The equipment employed by Brew House and/or its agents not only has the capacity to store or produce telephone numbers to be called using a random or sequential number generator (and to dial such numbers), but was programmed to sequentially or randomly access stored telephone numbers to automatically send text messages to those numbers.

39.     The text messages sent by Brew House to Plaintiff and the putative class were made for a commercial purpose in that they contain its brand name and location, they promote specials and events at Brew House, and/or they encourage Plaintiff and the putative class members to visit Brew House with their friends or associates.

40.     Brew House's text messages are advertisements and/or constitute telemarketing as

8

defined by the TCPA.

41.     Not only does Brew House fail to obtain prior express consent before sending such text messages, Brew House's text messages do not provide a way of opting out of future text messages.

42.     On information and belief, Brew House sent such advertising and/or telemarketing text messages without first establishing written policies or procedures to ensure compliance with the national and/or internal do-not-call rules and regulations, as required by 47 C.F.R. § 64.1200(d), and Brew House failed to train its staff in compliance with such policies and procedures.

43.     Brew House sent these text messages to Plaintiff and other putative class members' cellular telephone numbers who have their telephone numbers registered with the national do-not-call registry.

44.     On information and belief, many of Brew House's text messages were sent within 12 months of one or more prior text messages, and Brew House lacks an adequate system for preventing the transmission of numerous automated text messages to the same telephone number.

45.     Brew House is aware that the above-described text messages are being sent to consumers and businesses without their prior express consent, and to consumers and businesses who have registered their phone numbers on the do-not-call registry, but Brew House willfully continues to send them anyways.

46.     Plaintiff and the putative class members have been substantially damaged by Brew House's repeated text messages [5] – their privacy was invaded; they were annoyed and

---

[5]     *See Van Patten v. Vertical Fitness Group, LLC*, 847 F.3d 1037, 1043 (9th Cir. 2017) (allegations of "[u]nsolicited phone calls or text messages … invade the privacy and disturb the solitude of their recipients" and are sufficient to confer Article III standing); *Susinno v. Work Out World Inc.*, 862

inconvenienced; the repeated text messages intruded upon their seclusion and interfered with the exclusive use of their property; they were charged out of pocket cellular airtime minutes for the text messages and cellular data for services related to the text message content;[6] the ATDS calls intruded upon and occupied the capacity of the cellular phones of Plaintiff and the class members, depleted and/or reduced the lifespan of their cellular phone batteries,[7] caused Plaintiff and the class members to incur the costs of electricity to recharge their phones;[8] and, on information and belief, Brew House's repeated text messages have caused unwanted use, damage and/or depletion of their property, including, but not limited to, a reduction in the lifespan of their LCD screens, speakers, vibration motors, and other hardware and/or electronic components.

## FACTUAL ALLEGATIONS SPECIFIC TO PLAINTIFF BEAL

47. At all times relevant hereto, Plaintiff Beal has paid a third-party provider for cellular telephone service and cellular data service on his personal cellular telephone, which has an area code specific to central Missouri, ending in "6785".

---

F.3d 346 (3rd Cir. 2017) (same); *Williams v. zZounds Music, L.L.C.*, No. 16-cv-940 (W.D. Mo. Feb. 28, 2017) (same) (*citing Van Patten*); *Hunsinger v. Gordmans, Inc.*, No. 16-cv-162, 2016 WL 7048895 (E.D. Mo. Dec. 5, 2016) (same).

[6] *See In re Rules Implementing the Tel. Consumer Prot. Act of* 1991, 23 FCC Red. 559, 562, ¶ 7 (2008) ("wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used."); *see also Soppet v. Enhanced Recovery Co., LLC*, 679 F.3d 637 (7th Cir. 2012) (recipients are damaged because they are charged "out of pocket" cellular airtime minutes); *Lee v. Credit Mgmt., LP*, 846 F. Supp. 2d 716, 729 (S.D. Tx. 2012) (Plaintiff's statement that he pays a third-party provider for cellular phone services is sufficient to show that an individual was charged for the calls); *Warnick v. Dish Network LLC*, No. 12-cv-01952 (D. Co. Sep. 30, 2014) ("users of cellular telephone numbers *are indeed charged* for incoming calls, regardless of whether they incur any *additional* charges for such calls.").

[7] *See e.g.*, Apple Inc., *Battery Servicing and Recycling*, http://www.apple.com/batteries/service-and-recycling ("All rechargeable batteries have a limited lifespan … Your own battery's lifespan will vary depending on how you use your device …").

[8] *See Mey v. Got Warranty, supra fn. 2*, 193 F. Supp. 3d at 645-47 (Intangible harms include "intrusion upon and occupation of the plaintiff's cell phone. … [and] intrusion upon another person's computerized electronic equipment …" Tangible harms, including the cost of electricity, "[w]hile certainly small, [are] real, and the cumulative effect could be consequential.").

48. Plaintiff Beal visited Brew House during a happy hour.

49. As a condition to providing Plaintiff with its happy-hour special prices, and at the request of Brew House, Plaintiff was required to provide his phone number in order to obtain the happy-hour discounts on food and drinks.

50. On multiple occasions in 2016 and 2017, with the most recent message occurring on December 20, 2017, Brew House and/or its agents caused text messages to be sent, automatically and without human intervention, to Plaintiff's cell phone.

51. The text messages contained Brew House's brand name and location, promoted specials and events at Brew House, and/or encouraged Plaintiff to visit Brew House with his friends or associates.

52. The text messages sent by Brew House to Plaintiff were made for a commercial purpose and are advertisements and/or constitute telemarketing as defined by the TCPA.

53. Brew House did not provide Plaintiff and the class members with notice that it intended to send multiple autodialed, advertising, and/or telemarketing text messages to their cellular telephone numbers; and Plaintiff and the class members never provided express consent in writing, or otherwise, for Brew House to send such text messages to their cell phones.

54. On January 30, 2009, Plaintiff registered his wireless number ending in 6785 with the national do-not-call registry and received confirmation that his do-not-call registration would be effective as of February 2, 2009.

55. Since the effective date of Plaintiff's registration on the national do-not-call list in 2009 and between February 13, 2014 and April 4, 2018, Brew House has sent numerous advertising and/or telemarketing text messages to Plaintiff, many of which were within 12 months of one or more prior text messages.

11

56.     Plaintiff restates and incorporates by reference all paragraphs of this Complaint, including all subparagraphs thereof.

57.     As to Count I for violation of the TPCA (the "227(b)(1)(A)(iii) Class"), Plaintiff brings this action on behalf of himself and on behalf of a putative class defined as:

> All persons and entities within the United States to whom Brew House (or a third party on Brew House's behalf) sent a text message to their cellular or wireless telephone, promoting special pricing or events at Brew House, between February 13, 2014 and April 4, 2018.

58.     As to Count II for violation of the TPCA (the "64.1200(d) Class"), Plaintiff brings this action on behalf of himself and on behalf of a putative class defined as:

> All persons within the United States to whom, between February 13, 2014 and April 4, 2018, Brew House (or a third party on Brew House's behalf) sent more than one text message promoting special pricing or events at Brew House, within any twelve-month period.

59.     As to Count III for violation of the TPCA (the "227(c) Class"), Plaintiff brings this action on behalf of himself and on behalf of a putative class defined as:

> All persons within the United States whose phone numbers were registered on the national do-not-call registry and to whom, between February 13, 2014 and April 4, 2018, Brew House (or a third party on Brew House's behalf) sent more than one text message promoting special pricing or events at Brew House, within any twelve-month period.

60.     Excluded from the above-defined classes are Brew House, any entity in which Brew House has a controlling interest, Brew House's officers, directors, and employees, Brew House's counsel, any persons or entities who have previously settled a TCPA claim with Brew House, the Court and Court personnel, and Plaintiff's counsel.

61.     **Numerosity – Fed. R. Civ. P. 23(a)(1).**  Plaintiff does not know how many

members are in the putative class but believes them to be in the tens of thousands, if not more. On information and belief, the number of class members is so numerous that their individual joinder is impracticable. The precise number of putative class members and their phone numbers can be obtained from information and records in the possession and control of Brew House or third parties acting on Brew House's behalf.

62. **Existence and Predominance of Common Questions of Law and Fact – Fed. R. Civ. P. 23(a)(2) & 23(b)(3).** Common questions of law or fact exist as to all members within the putative class and predominate over any questions solely affecting any individual member. The predominating common legal and factual questions, each of which may also be certified under Fed. R. Civ. P. 23(c)(4), include the following:

(a) Whether Brew House and/or its agents used an automatic telephone dialing system to send text messages;

(b) Whether the equipment used by Brew House, or a third party on Brew House's behalf, has the capacity to send text messages automatically, *i.e.*, without human intervention;

(c) Whether Brew House's text messages are advertisements;

(d) Whether Brew House's text messages constitute telemarketing;

(e) Whether Brew House requires its customers provide their telephone numbers as a condition of providing goods and services;

(f) Whether Brew House advised Plaintiff and the class members that it intended to send autodialed, advertising, and/or telemarketing text messages to their cellular telephone numbers;

(g) Whether Brew House obtained the prior express consent, written or

13

otherwise, to send autodialed, advertising, and/or telemarketing text messages to the cellular telephone numbers of Plaintiff and the class members;

(h)     Whether Brew House's text messages were sent for an emergency purpose;

(i)      Whether Brew House's text messages were sent willfully or knowingly;

(j)      Whether Brew House (i) established and implemented written procedures to comply with the national do-not-call rules; (ii) trained its personnel in procedures established pursuant to the national do-not-call rules; (iii) maintained a list of telephone numbers Brew House may not contact; (iv) employed a version of the national do-not-call registry obtained from the administrator of the registry no more than 31 days prior to the date any call or text is made; and (v) maintained records documenting this process;

(k)     Whether Brew House (i) established and implemented written procedures to comply with the internal do-not-call rules; (ii) trained its personnel in procedures established pursuant to the internal do-not-call rules; (iii) maintained an internal list of telephone numbers Brew House may not contact; (iv) employed a version of the internal do-not-call list containing numbers updated no more than 30 days prior to the date any call is made; and (v) maintained records documenting this process; and/or

(l)      Whether, and to what extent, class members are entitled to equitable relief, including declaratory relief, a preliminary injunction, and/or permanent injunction.

63.     **Typicality – Fed. R. Civ. P. 23(a)(3).** Plaintiff's claims are typical of the claims

14

of the putative classes he seeks to represent. The factual and legal bases of Brew House's liability to Plaintiff is the same for all putative class members: (i) Brew House violated the TCPA by using an automatic telephone dialing system to send text messages without obtaining prior express written consent in writing or otherwise; (ii) Brew House violated the TCPA by sending multiple promotional text messages without complying with the requirements of 47 C.F.R. § 64.1200(d) and/or 47 U.S.C. § 227(c).

64.     **Adequacy of Representation – Fed. R. Civ. P. 23(a)(4).**  Plaintiff will fairly and adequately protect the interests of the putative class members. Plaintiff has no interests that might conflict with the interests of the putative class members. Plaintiff will pursue the claims vigorously, and Plaintiff has retained counsel competent and experienced in TCPA class actions and complex litigation.

65.     **Superiority – Fed. R. Civ. P. 23(b)(3).**  A class action is superior to all other available means for the fair and efficient adjudication of this controversy. The damages or other financial detriment suffered by individual class members is small compared with the burden and expense that would be entailed by individual litigation of their claims against Brew House. It would thus be virtually impossible for class members, on an individual basis, to obtain effective redress for the wrongs done to them. Furthermore, even if class members could afford such individualized litigation, the court system could not. Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts. Individualized litigation would also increase the delay and expense to all parties and the court system from the issues raised by this action. By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, economies of scale, and comprehensive supervision by a single court, and presents no unusual management difficulties

under the circumstances here.

**COUNT I**
**VIOLATIONS OF THE TCPA, 47 U.S.C. § 227(b)(1)(A)(iii)**

66.     Plaintiff restates and incorporates by reference all paragraphs of this Complaint, including all subparagraphs thereof.

67.     Brew House and/or its agents employed an ATDS to send non-emergency text messages, automatically and without human intervention, to the cellular or wireless telephones of Plaintiff and the members of 227(b)(1)(A)(iii) Class.

68.     Brew House requested, and obtained, the cellular telephone numbers of many of the 227(b)(1)(A)(iii) Class members as a condition to providing its goods and services.

69.     Brew House never obtained prior express consent in writing, or otherwise, advising Plaintiff or the members of the 227(b)(1)(A)(iii) Class that it intended to send autodialed, advertising, and/or telemarketing text messages to their cellular or wireless telephones.

70.     As a result of Brew House's conduct and pursuant to Section 227(b)(3) of the TCPA, Plaintiff and the 227(b)(1)(A)(iii) Class were harmed and are entitled to a minimum of $500 in damages for each unlawful text message.

71.     Plaintiff and the 227(b)(1)(A)(iii) Class are also entitled to an injunction against future calls.  47 U.S.C. § 227(b)(3).

72.     Brew House's text messages were willful and knowing, in that Brew House knew it was obtaining and storing cellular telephone numbers and employing equipment that would send autodialed, advertising, and/or telemarketing text messages to such numbers; Brew House intended that such equipment would in fact send automated text messages containing its brand name and location, and promoting specials and events at Brew House;  and Brew House knew that it had not obtained prior express consent in writing, or otherwise, from Plaintiff or any of the putative class

16

members to send such text messages.

73.     "Willful … means that the violator knew that he was doing the act in question. … A violator need not know that his action or inaction constitutes a violation; ignorance of the law is not a defense or mitigating circumstance." *In re Dynasty Mtg., L.L.C.*, 22 FCC Rcd. 9453, 9470 & fn. 86 (May 14, 2007) (citations omitted).

74.     Accordingly, the Court should treble the amount of statutory damages available to Plaintiff and the 227(b)(1)(A)(iii) Class and award $1,500 for each text message sent in violation of the TCPA.

WHEREFORE, Plaintiff, individually and on behalf the 227(b)(1)(A)(iii) Class, seeks $1,500 per violation of the TCPA; a declaration that Brew House's telemarketing methods, acts and practices herein violate the TCPA, 47 U.S.C. § 227, *et seq.*; an injunction prohibiting Brew House from continuing to engage in such unlawful methods, acts, and practices; and attorneys' fees and costs.

## COUNT II
## VIOLATIONS OF THE TCPA, 47 C.F.R. § 64.1200(d)

75.     Plaintiff restates and incorporates by reference all paragraphs of this Complaint, including all subparagraphs thereof.

76.     Brew House's text messages were made for a commercial purpose, in that they contain its brand name and location, they promote specials and events at Brew House, and/or they encourage Plaintiff and the putative class members to visit Brew House with their friends or associates.

77.     Brew House sent more than one advertising and/or telemarketing text message within any twelve-month period to Plaintiff and the 64.1200(d) Class even though Brew House did not first institute procedures for initiating telemarketing calls or text messages that meet (or

exceed) the following minimum standards:

- Written policies and procedures, available upon demand, for maintaining a do-not-call list;

- Policies and procedures for the training of personnel engaged in any aspect of telemarketing, on the existence and use of the do-not-call list;

- Policies and procedures for the recording of any request not to receive calls, at the time the request is made, including the subscriber's name, if provided, and telephone number, and honoring any such requests within a reasonable time from the date such request is made.

- Policies and procedures for employing a version of the internal do-not-call list containing numbers updated no more than 30 days prior to the date any call is made;

- Policies and procedures for providing the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted; and

- Policies and procedures for maintaining records documenting this process, for a period of not less than 5 years.

78. On information and belief, Brew House is not a tax-exempt nonprofit organization and is therefore required to comply with the minimum standards set forth in 47 C.F.R. § 64.1200(d). *See* 47 C.F.R. § 64.1200(d)(7).

79. On information and belief, Brew House did not implement any of the minimum standards required by 47 C.F.R. § 1200(d)(1)-(6).

80. Brew House's text messages do not sufficiently identify the name of the individual caller, and do not provide a (working) telephone number[9] or address at which the person or entity

---

[9] Brew House's text messages do not provide a telephone number, toll-free or otherwise, for consumers and businesses to call in order to opt out of future text messages. Additionally, if you call the telephone numbers Brew House used to send a text message to Plaintiff cellular telephone number on December 20, 2017, you are greeted with a message that states, "We're sorry, you've

may be contacted.

81.     As a result of Brew House's conduct and pursuant to Section 227(c)(5) of the TCPA, Plaintiff and the 64.1200(d) Class were harmed and are entitled to a minimum of $500 in damages for each unlawful text message.

82.     Plaintiff and the 64.1200(d) Class are also entitled to an injunction against future calls.  47 U.S.C. § 227(c)(5).

83.     Brew House's text messages were willful and knowing, in that Brew House knew it was sending advertising and/or telemarketing text messages to the cellular telephone numbers of Plaintiff and the class members without first implementing procedures required by 47 C.F.R. § 64.1200(d), but Brew House chose to send such text messages anyways.

84.     "Willful … means that the violator knew that he was doing the act in question. … A violator need not know that his action or inaction constitutes a violation; ignorance of the law is not a defense or mitigating circumstance."  *In re Dynasty Mtg., L.L.C.*, 22 FCC Rcd. 9453, 9470 & fn. 86 (May 14, 2007) (citations omitted).

85.     Accordingly, the Court should treble the amount of statutory damages available to Plaintiff and the 64.1200(d) Class and award $1,500 for each text message sent in violation of the TCPA.

WHEREFORE, Plaintiff, individually and on behalf the 64.1200(d) Class, seeks $1,500 per violation of the TCPA; a declaration that Brew House's telemarketing methods, acts and practices herein violate the TCPA, 47 U.S.C. § 227, *et seq*.; an injunction prohibiting Brew House from continuing to engage in such unlawful methods, acts, and practices; and attorneys' fees and

---

reached a telephone number that has been disconnected or is no longer in service.  If you feel you have reached this recording in error, please check the number and try your call again."

costs.

<u>**COUNT III**</u>

**VIOLATIONS OF THE TCPA, 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(c)(2)**

86.     Plaintiff restates and incorporates by reference all paragraphs of this Complaint, including all subparagraphs thereof.

87.     Brew House's text messages were made for a commercial purpose, in that they contain its brand name and location, they promote specials and events at Brew House, and/or they encourage Plaintiff and the putative class members to visit Brew House with their friends or associates.

88.     Brew House sent more than one advertising and/or telemarketing text message within any twelve-month period to Plaintiff and the 227(c) Class after their telephone numbers had been registered on the national do-not-call registry for more than 31 days.

89.     These advertising and/or telemarketing text messages were made even though Brew House did not obtain prior express consent in writing, or otherwise, to send such text messages to Plaintiff or the 227(c) Class.

90.     As a result of Brew House's conduct and pursuant to Section 227(c)(5) of the TCPA, Plaintiff and the 227(c) Class were harmed and are entitled to a minimum of $500 in damages for each violation.

91.     Plaintiff and the 227(c) Class are also entitled to an injunction against future calls. 47 U.S.C. § 227(c)(5).

92.     On information and belief, Brew House failed to (i) establish and implement written procedures to comply with the national do-not-call rules; (ii) train its personnel in procedures established pursuant to the national do-not-call rules; (iii) maintain a list of telephone numbers Brew House may not contact; (iv) employ a version of the national do-not-call registry obtained

20

from the administrator of the registry no more than 31 days prior to the date any call is made, and (v) maintain records documenting this process.

93.    On information and belief, Brew House failed to honor the national do-not-call registry, failed to provide "an interactive opt-out mechanism" by which Plaintiff and the 227(c) Class could opt out of future calls, and failed to maintain an "automated, interactive voice- and/or key press-activated opt-out mechanism" by which Plaintiff and the 227(c) Class could call a separate toll-free number and add their numbers to Brew House's internal do-not-call list.

94.    Brew House's text messages were willful and knowing, in that Brew House knew it was sending advertising and/or telemarketing text messages to the cellular telephone numbers of Plaintiff and the class members registered on the national do-not-call list, but Brew House chose to send such text messages anyways.

95.    "Willful … means that the violator knew that he was doing the act in question. … A violator need not know that his action or inaction constitutes a violation; ignorance of the law is not a defense or mitigating circumstance." *In re Dynasty Mtg., L.L.C.*, 22 FCC Rcd. 9453, 9470 n. 86 (May 14, 2007) (citations omitted).

96.    Accordingly, the Court should treble the amount of statutory damages available to Plaintiff and the 227(c) Class and award $1,500 for each violation of the TCPA.

WHEREFORE, Plaintiff, individually and on behalf the 227(c) Class, seeks $1,500 per violation of the TCPA; a declaration that Brew House's methods, acts and practices violate the TCPA, 47 U.S.C. § 227, *et seq*.; an injunction prohibiting Brew House from continuing to engage in such unlawful methods, acts, and practices; and attorneys' fees and costs.

## JURY DEMAND

Plaintiff demands a trial by jury of all claims that are so triable.

Dated: May 14, 2018                                    Respectfully submitted,

                                                         /s/ Bill Kenney
                                                        William C. Kenney    Mo. Bar No. 63001
                                                        **BILL KENNEY LAW FIRM, LLC**
                                                        1100 Main Street, Suite 1800
                                                        Kansas City, MO 64105
                                                        Telephone: (816) 842-2455
                                                        Facsimile: (816) 474-8899
                                                        Email: *bkenney@billkenneylaw.com*

                                                        *and*

                                                        Ari N. Rodopoulos    Mo. Bar No. 58777
                                                        **WOOD LAW FIRM, LLC**
                                                        1100 Main Street, Suite 1800
                                                        Kansas City, MO 64105-5171
                                                        T: (816) 256-3582
                                                        F: (816) 337-4243
                                                        Email: *ari@woodlaw.com*

                                                        *Attorneys for Plaintiff and all others
                                                        similarly situated*

## CERTIFICATE OF SERVICE

I hereby certify that, on May 14, 2018, the foregoing document was electronically filed

with the Court's Electronic Filing System and will be served electronically on all registered

attorneys of record.

                                                         /s/ Bill Kenney
                                                        William C. Kenney