IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | |
|---|---|
| COLBY BEAL, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 2:18-cv-4028-MDH |
| | ) |
| OUTFIELD BREW HOUSE, LLC | ) |
| d/b/a BUDWEISER BREW HOUSE, | ) |
| | ) |
| Defendant | ) |

## ORDER

Before the Court are the following motions: Plaintiff's Motion for Class Certification (Doc. 173); Defendant's Motion for Summary Judgment (Doc. 183);[1] Plaintiff's Cross-Motion for Partial Summary Judgment (Doc. 203); and Defendant's Motion to Exclude the Opinion and Testimony of Plaintiff's Proffered Expert Dr. Michael Shamos (Doc. 212). On November 15, 2019 the Court heard argument on the pending motions. The motions are now ripe for review. For the reasons that follow, the Court **GRANTS** Defendant's motion for summary judgment, **DENIES** Plaintiff's cross-motion for partial summary judgment and motion for class certification, and **DENIES IN PART AND GRANTS IN PART** Defendant's motion to exclude the opinion of Dr. Shamos.

## BACKGROUND

Plaintiff's First Amended Class Action Complaint against Outfield Brew House, LLC d/b/a Budweiser Brew House ("Brew House") brings the following claims under the Telephone

---

[1] Defendant filed its motion for summary judgment under seal (Doc. 183) and a redacted version of the same motion for summary judgment (Doc. 185).

Consumer Protection Act ("TCPA"): Count I - alleges that Brew House violated Section 227(b)(1)(A)(iii) of the TCPA which prohibits making a non-emergency call, or a call without the prior express consent of the called party, using an automatic telephone dialing system to a cellular telephone number (the "ATDS Claim"); Count II - alleges that Brew House violated the regulations set out in 47 C.F.R. § 64.1200(d) which requires a company to institute certain policies and procedures before calling a residential telephone subscriber on a landline for a telemarketing purpose; and Count III - alleges that Brew House violated Section 227(c) of the TCPA and the regulation set out in 47 C.F.R. § 64.1200(c)(2), which prohibits telephone solicitations, as defined by the TCPA, to residential telephone subscribers who registered their numbers on the National Do Not Call Registry ("NDNCR").[2]

Brew House is a restaurant, bar, and nightclub located in Ballpark Village in St. Louis, Missouri. Plaintiff was a customer of Brew House.[3] As part of its promotions, Brew House offered contests, giveaways, and parties to its customers through text messages. One method Brew House used to obtain customer information, including phone numbers, was through the use of paper cards given to customers in their establishment. Customers could complete the cards by filling out their name, e-mail, birthday, phone number and zip code and be entered into contests to win a happy hour and/or other promotional offers. The paper cards included a signature line where the customer could sign their name. Brew House contends completion of the cards by customers was voluntary. Plaintiff argues Brew House required patrons to complete the cards and provide their information.

The paper cards, which are at issue in this case, state, in part:

---

[2] Plaintiff does not contest summary judgment on Counts II and III. (Doc. 204, p. 22).
[3] The parties dispute the specifics of when Plaintiff visited Brew House. However, it is undisputed he was a customer of the establishment on more than one occasion.

2

> By providing us with your contact information and affixing your signature above, you consent to receiving calls, text messages and emails via automated means regarding promotions, specials and other marketing offers. Your consent to receive calls, text messages and emails is not a condition of purchase. Data and/or message rates may apply.[4]

Brew House did not maintain the physical paper cards completed by customers. Instead, the paper cards were shredded after the information was recorded into a spreadsheet by Brew House employees. Brew House maintained a record of the information provided by customers, including their name, e-mail, birthday, and phone number in a spreadsheet. Brew House contends only information from customers who signed the cards were entered into the spreadsheet. Plaintiff argues whether customers signed the cards cannot be verified and unsigned data was entered into Brew House's database.[5]

Hannah Friedenbach and Olivia Ricci were Brew House employees whose responsibilities included collecting the paper cards, recording the customers' information from the card, communicating with contest winners, and planning happy hour events. Friedenbach and Ricci reported to Dana Biffar, their manager. Biffar uploaded a February 2016 spreadsheet, containing customer information retrieved from the paper cards, to the SendSmart text platfrom.

Through the SendSmart platform, Friedenbach sent a text message to Plaintiff on February 18, 2016 that stated:

> Hi Colby, it's Hannah from Budweiser Brew House. You entered to win a free Happy Hour & today your name was selected! Text "CHEERS" for info :)[6]

---

[4] The paper cards are two-sided and measure approximately 3 x 4 inches. The disclaimer is presented in "fine print" on the card.
[5] The parties dispute some of the details of the record keeping of the paper cards, including whether customers had signed the cards. However, the Court finds these disputes immaterial to the issues relevant for summary judgment.
[6] Plaintiff disputes that he completed or signed a paper card but admits he received this text.

3

In order to send the text message Friedenbach logged on to SendSmart, created the text message, and then pressed a button to send the message. Friedenbach also selected a group of customers she wanted to send the message to, for example "customers over the age of 30," in order to appeal to a certain demographic. Plaintiff argues that Friedenbach did not "create the message" because SendSmart used variables to automatically import and fill in information from the database, such as a person's first name. However, Plaintiff admits Friedenbach must click the launch button to send the message and can choose a subset of contacts from the database to send the message to.

In March 2016, Brew House began using the Txt Live! platform in place of the SendSmart platform. The February 2016 spreadsheet was uploaded to the new platform. On December 20, 2017, Ricci sent Plaintiff a text message which stated:

> Hi Colby! It's Olivia from Brew House in Ballpark Village. Today, you've been chosen for a free Happy Hour & Blues Watch Party! Reply "NOTE" for more info!

Ricci logged on to Txt Live! to send this message. She created the message and pressed a button to send the message. Ricci identified customers who met certain requirements to deliver the message to regarding the happy hour and watch party, including a certain age demographic. Plaintiff argues Ricci did not "create" the message but agrees Ricci had to manually press a button to send the message (that could go to "thousands" of people if they were chosen to receive it). Plaintiff did not respond to either text message he received from Brew House.

Both Send Smart and Txt Live! required numbers to be entered into the system manually, either by importing information from a CSV file or by an individual manually typing in the numbers. In order to send a text message using either of the platforms the contacts must be imported into the system by the user. Plaintiff argues Txt Live! can "randomize contacts" in the campaign process, but admits the numbers have to be uploaded into the system. Further, a Brew House employee must log into the system to send a message and must manually hit send or launch

4

to deliver the message. Plaintiff does not dispute that human intervention is required "at points in the process" of sending a message through both platforms, however, Plaintiff argues that human intervention is not required in the "dialing process."

## STANDARD OF REVIEW

Summary judgment is proper if, viewing the record in the light most favorable to the non-moving party, there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Celotex Corp., v. Catrett,* 477 U.S. 317, 322-23, 106 S. Ct. 2548 (1986). The moving party is entitled to summary judgment as a matter of law if they can establish there is "no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S. Ct. 2505, 2510, (1986). Once the moving party has established a properly supported motion for summary judgment, the non-moving party cannot rest on allegations or denials but must set forth specific facts showing that there is a genuine issue for trial. *Id.* at 248. A question of material fact is not required to be resolved conclusively in favor of the party asserting its existence. Rather, all that is required is sufficient evidence supporting the factual dispute that would require a jury to resolve the differing versions of truth at trial. *Id.* at 248-249.

## DISCUSSION

As an initial matter, Plaintiff's response to summary judgment states that he does not contest summary judgment on Counts II and III. *See* Doc. 204, p. 22. As a result, the Court grants summary judgment in favor of Brew House on Plaintiff's claims set forth in Counts II and III.

Plaintiff's sole remaining claim, as set forth in Count I, is his automatic telephone dialing system ("ATDS") claim under the TCPA. To prevail on this claim, Plaintiff must establish that Brew House: 1) texted his phone; 2) using an ATDS; and 3) without his prior written consent.

5

*See* 47 U.S.C. § 227(b)(1)(A). Brew House argues the platforms they used are not ATDS, and even if they are found to be an ATDS, Plaintiff consented to receiving the text messages.

**Automatic Telephone Dialing System**

The TCPA defines an ATDS as "equipment which has the capacity…(A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1). The definition of an ATDS, and whether Brew House's platforms fall under the TCPA definition, is the first issue before the Court. As the parties indicate, the Federal Communications Commission has issued rulings seeking to clarify what qualifies as an ATDS, including a ruling that the capacity to dial without human intervention qualifies as an ATDS because it has the basic function of autodialing equipment. See Doc. 184, p. 29. The issue regarding whether the system, or technology, must be able to generate and/or create numbers to dial in order to qualify as an ATDS has been the subject of much debate in light of the advancements in technology that have occurred since the TCPA was enacted.

Defendant cites to *ACA Int'l v. Fed. Commc'ns Comm'n*, 885 F.3d 687 (D.C. Cir. 2018) in support of its argument that the platforms at issue in this case do not qualify as an ATDS. In *ACA,* the United States Court of Appeals for the District of Columbia addressed the question of what qualifies as an ATDS stating:

> So which is it: does a device qualify as an ATDS only if it can generate random or sequential numbers to be dialed, or can it so qualify even if it lacks that capacity? The 2015 ruling, while speaking to the question in several ways, gives no clear answer (and in fact seems to give both answers). It might be permissible for the Commission to adopt either interpretation. But the Commission cannot, consistent with reasoned decisionmaking, espouse both competing interpretations in the same order.

*Id.* at 702–03. The D.C. Circuit concluded that the Commission's interpretation of an equipment's capacity was overbroad because it could have the effect of embracing any and all smartphones as

autodialers. *Id.* at 700. The D.C. Circuit expressed its concerns regarding a broad definition that would qualify every smartphone as an ATDS device because it then would subject any smartphone user to a TCPA violation if a message is sent without advance consent. *Id.* at 697. Because "[t]he order's lack of clarity about which functions qualify a device as an autodialer compounds the unreasonableness of the Commission's expansive understanding of when a device has the 'capacity' to perform the necessary functions," the court "set aside the Commission's treatment of those matters." *Id.* at 703.

> The Third Circuit addressed the *ACA* opinion in *Dominguez* stating:
>
> The D.C. Circuit held that the FCC had exceeded its authority by interpreting the term "capacity" to include any latent or potential capacity and described the FCC's approach as utterly unreasonable in the breadth of its regulatory [in]clusion. In particular, the D.C. Circuit took issue with the fact that a straightforward reading of the [FCC's] ruling invites the conclusion that all smartphones are autodialers. This was so because, as the FCC had conceded, any ordinary smartphone could achieve autodialer functionality by simply downloading a random-number-generating app. The D.C. Circuit therefore set aside the FCC's 2015 Declaratory Ruling.

*Dominguez on Behalf of Himself v. Yahoo, Inc.,* 894 F.3d 116, 118–19 (3d Cir. 2018) (internal citations and quotations omitted).[7] The Third Circuit held that when a system could only send

---

[7] Several courts have concluded that a device must be capable of generating random or sequential telephone numbers to qualify as an ATDS. See e.g., *Thompson-Harbach v. USAA Fed. Sav. Bank,* 359 F. Supp. 3d 606, 626 (N.D. Iowa 2019) (declining to follow the Ninth Circuit's decision in *Marks*); *Roark v. Credit One Bank*, N.A., No. CV 16-173 (PAM/ECW), 2018 WL 5921652, at *4 (D. Minn. Nov. 13, 2018), appeal dismissed, No. 18-3643, 2019 WL 2447062 (8th Cir. Jan. 4, 2019); *Gadelhak v. AT&T Servs., Inc.*, No. 17-CV-01559, 2019 WL 1429346, at *7 (N.D. Ill. Mar. 29, 2019) (appeal pending in Seventh Circuit, No. 19-1738) ("Based on the record evidence, there is no genuine dispute that AT&T's system cannot *generate* telephone numbers randomly or sequentially—as those terms are used in the TCPA—and thus it is not an ATDS and is not prohibited."); *Keyes v. Ocwen Loan Servicing, LLC,* 335 F. Supp. 3d 951, 962 (E.D. Mich. 2018), dismissed, No. 18-1989, 2018 WL 6242281 (6th Cir. Oct. 24, 2018) ("The better reading of the Act, this Court will conclude, is that devices must be able to generate random or sequential numbers to be dialed to qualify as an ATDS. This approach tracks the statutory language."); and *Johnson v. Yahoo!, Inc.,* 346 F. Supp. 3d 1159, 1162 (N.D. Ill. 2018), appeal dismissed, No. 19-

7

messages to numbers that had been individually and manually inputted by a user the system did not qualify as an ATDS. *Id.* at 121. The Sixth Circuit has also affirmed summary judgment in favor of defendants on a system that did not qualify as an ATDS when there was no evidence the system could randomly generate and text phone numbers. *See Gary v. TrueBlue, Inc.*, 786 F. App'x 555, 557 (6th Cir. 2019) (affirming summary judgment for defendant because the TCPA "requires a showing that the system has the capacity to randomly or sequentially dial or text phone numbers" in order to qualify as an ATDS). Finally, the Eleventh Circuit recently held that phone systems that do not randomly or sequentially generate numbers do not constitute an ATDS. *Glasser v. Hilton Grand Vacations Co.*, LLC, No. 18-14499, 2020 WL 415811 (11th Cir. Jan. 27, 2020).[8] The Eleventh Circuit also found that when human intervention was required it was not an ATDS. *Id.* at *7-8 ("…An employee's choice initiates every call.")

On the other hand, Plaintiff urges the Court to follow the Ninth Circuit's opinion, which found the statutory definition of an ATDS ambiguous and interpreted an ATDS to include devices with the capacity to dial stored numbers automatically. *Marks v. Crunch San Diego, LLC.,* 904 F.3d 1041, 1050 (9th Cir. 2018). In *Marks,* the Ninth Circuit stated:

> [W]e read § 227(a)(1) to provide that the term automatic telephone dialing system means equipment which has the capacity—(1) to store numbers to be called or (2) to produce numbers to be called, using a random or sequential number generator— and to dial such numbers.

---

1001, 2019 WL 3010807 (7th Cir. Apr. 1, 2019) ("Curated lists developed without random or sequential number generation capacity fall outside the statute's scope.")
[8] "We are not alone in adopting this interpretation. Several other courts agree." *Id.* at *6, citing *Dominguez v. Yahoo, Inc.*, 894 F.3d 116, 119 (3d Cir. 2018); *DeNova v. Ocwen Loan Servicing,* No. 8:17-cv-2204-T-23AAS, 2019 WL 4635552 at *3–4 (M.D. Fla. Sept. 24, 2019); *Adams v. Safe Home Sec. Inc.*, No. 3:18-cv-03098-M, 2019 WL 3428776 at *3–4 (N.D. Tex. July 30, 2019); *Gadelhak v. AT&T Servs., Inc.*, No. 17-cv-01559, 2019 WL 1429346 at *5–6 (N.D. Ill. Mar. 29, 2019); *Keyes v. Ocwen Loan Servicing*, LLC, 335 F. Supp. 3d 951, 962–63 (E.D. Mich. 2018).

8

*Id.* at 1052. Further, the court reasoned "common sense indicates that human intervention of some sort is required before an autodialer can begin making calls, whether turning on the machine or initiating its function." *Id.* at 1052-1053. (vacating summary judgment and remanding for further proceedings on whether the system is an ATDS).[9] For the reasons set forth herein, and as discussed in the cases criticizing *Marks,* this Court declines to follow the Ninth Circuit's interpretation of an ATDS.

Here, this Court finds that for the system to meet the definition of an ATDS it must produce numbers to be called "using a random or sequential number generator." See *Dominguez on Behalf of Himself v. Yahoo, Inc.,* 894 F.3d at 121 (finding the system did not fall under the TCPA prohibition because it did not have the "present capacity to function as an autodialer by generating random or sequential telephone numbers and dialing those numbers"). The platforms at issue in this case could only text individuals whose numbers had been entered into the system manually – either by importing information from a CSV file or individually typing in the number. In other words, the system did not generate telephone numbers, it merely stored them.

While Plaintiff denies the fact that the platforms did not generate telephone numbers, he has no evidence to dispute this. Instead, Plaintiff argues that Txt Live!'s code uses a "shuffle" function and has software that "randomize[s] contacts" as a step in the campaign process. However, taking Plaintiff's argument as true, if the software can "randomly-select phone

---

[9] There are courts that have followed the Ninth Circuit's opinion that a "device can be an ATDS if it merely dials numbers from a stored list." See e.g. *Gonzalez v. HOSOPO Corp.,* 371 F. Supp. 3d 26, 34 (D. Mass. 2019); and *Espejo v. Santander Consumer USA, Inc.*, No. 11 C 8987, 2019 WL 2450492, at *8 (N.D. Ill. June 12, 2019) ("Indeed, because Aspect automatically dials numbers from a set customer list, it falls within the definition of an ATDS.").

numbers," that is not the same as generating them. Instead, Plaintiff's argument is that the software can shuffle, or randomize, from the contacts that were already uploaded into the system manually. This does not constitute an ATDS.

Further, the platforms used by Brew House also required additional human intervention, in addition to the uploading or entry of phone numbers, including the selection of the demographics who received the text, the message that would be sent, and the actual clicking of the launch or send function.[10] The platforms used by Brew House did not have the ability to generate, or create, numbers. Rather, the platforms used numbers that were imported in a CSV file or manually entered by an individual typing the number into the system, a set list given to the system. See *Thompson-Harbach v. USAA Fed. Sav. Bank,* 359 F. Supp. 3d at 612 (finding the system was not an ATDS when it could only call the specific stored telephone numbers and could not independently generate any other telephone numbers); and *Fleming v. Associated Credit Servs., Inc.,* 342 F. Supp. 3d 563, 578 (D.N.J. 2018) (finding system did not qualify as an ATDS when human intervention was required to initiate the call). Further, in this case Brew House employees were a necessary component in selecting both the demographics and the specific message that would be sent out in each promotional text. See e.g., *Ung v. Universal Acceptance Corp.,* 249 F. Supp. 3d 985, 989-91 (D. Minn. 2017); and *Ramos v. Hopele of Fort Lauderdale*, LLC, 334 F. Supp. 3d 1262 (S.D. Fla. 2018).[11] Finally, a Brew House employee had to manually click the send or launch function in order for the message to be delivered. For all these reasons,

---

[10] Plaintiff argues that the user does not have to type in or enter a message because there are stored messages that can be sent. Plaintiff argues there are also messages that can be copied and pasted to be sent. However, there is human intervention required in order to select that message, even if it is a stored message that was already in the system.

[11] Defendant cites to numerous district court cases finding that when human intervention was required to send the message the system did not qualify as an ATDS. See Doc. 184, pp. 34-35.

10

including both the platforms' inability to generate numbers and the human intervention required to send the messages, the Court finds the platforms are not an ATDS under the TCPA.[12]

**Defendant's Motion to Exclude the Opinion of Dr. Shamos**

Defendant moves to exclude the opinion of Plaintiff's expert Dr. Shamos arguing that his testimony concerns legal interpretations and also fails to use a generally accepted methodology.

First, the standard to admit expert testimony is stated in Federal Rule of Evidence 702 as amended in 2000 to conform with *Daubert v. Merell Dow Pharmaceuticals, Inc.*, 509 U.S. 479 (1993). The Rule states:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. "The proponent of the expert testimony must prove its admissibility by a preponderance of the evidence." *Lauzon v. Senco Products, Inc.,* 270 F.3d 681, 686 (8th Cir. 2001).

Defendant argues plaintiff's expert, Dr. Shamos, offers opinions concerning how the TCPA should be interpreted and constructed and whether the platforms at issue are an ATDS. Defendant contends these opinions constitute legal interpretations that are not admissible or subject to an expert's opinion. To the extent Dr. Shamos offers legal opinions the Court finds any such opinions are not admissible. Otherwise, the motion to exclude Dr. Shamos' opinion is

---

[12] Because the Court finds the systems at issue do not qualify as an ATDS, the Court does not need to resolve whether Plaintiff gave prior express consent to receive the text message.

11

overruled and the opinion has been considered.  However, even full consideration of Dr. Shamos' opinion does not lead this Court to a different result.

**Plaintiff's Motion for Class Certification and Cross Motion for Summary Judgment**

For the reasons set forth herein, the Court grants summary judgment in favor of Defendants.  As a result, Plaintiff's Motion for Class Certification is denied.  The Court finds Plaintiff cannot survive summary judgment and therefore Plaintiff's motion for class certification does not require further consideration.  Plaintiff's cross-motion for summary judgment, moving the Court to find that SendSmart and Txt Live! Software constitute an ATDS, is also denied for the reasons stated herein.

## CONCLUSION

Wherefore, for the reasons set forth herein, Plaintiff's Motion for Class Certification (Doc. 173) is **DENIED**; Defendant's Motion for Summary Judgment (Doc. 183) is **GRANTED**; Plaintiff's Cross-Motion for Partial Summary Judgment (Doc. 203) is **DENIED**; and Defendant's Motion to Exclude the Opinion and Testimony of Plaintiff's Proffered Expert Dr. Michael Shamos (Doc. 212) is **DENIED IN PART AND GRANTED IN PART**.

**IT IS SO ORDERED.**

DATED:  February 10, 2020

                                                 */s/ Douglas Harpool*
                                                 **DOUGLAS HARPOOL**
                                                 **UNITED STATES DISTRICT JUDGE**

12

Case 2:18-cv-04028-MDH   Document 252   Filed 02/10/20   Page 12 of 12